## Wolverine Coal Company v. Clem et al.

(Decided March 3, 1933.)

HENRY L. SPENCER and FELIX S. DUMAS for appellant.

W. L. KASH for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On July 29, 1929, appellee William Clem, while working for the appellant, Wolverine Coal Company, in its coal mine was struck by falling slate and severely injured. It is conceded that this accident arose out of and in the course of his employment. He was employed as a coal loader, but at the time of the accident he was assisting a fellow employee in laying rails in a room preparatory to loading coal. While bending over engaged in this work, a large rock, or piece of slate, described by one witness as weighing 2,000 or 2,500 pounds, fell and struck the appellee. A gash was cut in his forehead, several of his ribs were broken, and he was otherwise injured.

The company paid him compensation for fifteen weeks at the rate of $9.75 a week and then discontinued.

the payments on the ground that he had fully recovered from the injury. After the accident the appellee became extremely nervous and was incapable of heavy manual labor. On March 10, 1930, he made application for compensation under the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.) on the theory that his nervous condition was caused by the accident of July 29, 1929.

On a hearing before one member of the board, it was held that appellee by reason of the injury had a condition of temporary total disability for a period of seventy-eight weeks and he was awarded compensation at the rate of $9.75 a week for that period, less one-week waiting period. The order making this award was entered on March 3, 1931, and on a review by the full board it was affirmed. The company filed a petition for review in the circuit court, which affirmed the award of the Compensation Board, and from the judgment of the circuit court this appeal is prosecuted.

The sole question presented is whether or not there was any evidence to support the finding of the Compensation Board that appellee's nervous condition was due solely to the accident. The appellee testified that prior to the accident he had been a strong, healthy man capable of performing heavy manual labor and that immediately after the accident he became extremely nervous and was unable to do any heavy work. His testimony was corroborated by three witnesses who were his neighbors and who had worked with him. He introduced no medical testimony.

Dr. Wilgus Bach, the company physician, treated the appellee, and he testified that appellee had an injury over his right eye, an injury to the right side of his chest, and that some of his ribs were broken. While Dr. Bach was treating him the nervous condition developed. In speaking of this condition he said:

"He had a complete nervous breakdown; he was a very sick man after the injury he received; so far as being able to state the exact cause to which you might attribute this condition I am unable to say. Sometimes they come from one cause, sometimes another."

Later in his testimony he stated that he did not think the nervous condition resulted from the injury. On

December 15, 1929, Dr. Bach made this report to the company:

"I don't think he is a malingerer but I doubt if any of his trouble is due to the injury but I think it is due to the nervousness."

And on January 14, 1930, he made this report:

"Advise you to pay him compensation until January 1, order him before clinic to determine whether his condition is due to nervousness or whether he is entitled to continued compensation because of the injury. I think this is only fair to the company and to the man. In this way you get the unbiased opinion of doctors and specialists and may determine his exact physical state."

In February, 1930, appellee was taken to Louisville and placed in the Kentucky Baptist Hospital, where he was examined by Dr. E. L. Henderson and Dr. Frank M. Stites. They found him extremely nervous, but they were of the opinion that the nervousness was due to an infection from abscessed teeth. In a report made by Dr. Henderson on February 13, 1930, which was introduced in evidence, he said:

"I am of the opinion that all of this man's trouble is due entirely to the infection in the mouth and believe after he gets the remainder of his teeth extracted and takes some good tonic in order to build him up, that he will return to as near normal health as he was previous to the above-mentioned accident. I am unable to find any evidence of permanent disability as a result of said accident."

It will thus be noted that appellee's evidence was to the effect that prior to the accident he had been a strong, healthy man and that immediately after the accident he became extremely nervous and unable to do any work of consequence. Opposed to this is the testimony of the physicians who treated and examined him. They stated that in their opinion his nervous condition was not due to the accident, but resulted from an infection in his mouth. Considering these facts together, is there any competent and relevant testimony to sustain the finding of the board that the sole cause of appellee's disability was the accident of July 29, 1929?

In Edgewater Coal Company v. Ramey, 235 Ky. 703, 32 S.W.(2d) 56, 57, Ramey was struck in the right

eye by a small piece of coal, and a slight ulcer resulted but which was apparently cured. Later he lost the sight of this eye, and he made application for compensation on the theory that his loss of sight was caused by the accident. The Compensation Board held that the loss of sight was due 50 per cent. to the accident and 50 per cent. to pre-existing disease, and its award was affirmed by the circuit court. In affirming the judgment of the circuit court this court said:

> "Appellee introduced no evidence except his own testimony. Appellant introduced three witnesses, all of whom were eye specialists. They all testified that the blindness of the eye was due to an involvement of the choroid and the retina and was not due in any manner whatever to the scar on the cornea. They were unable to state what had caused the involvement of the choroid and retina, contenting themselves with saying that many things could have caused it, as for instance the condition of appellee's blood. The appellee's testimony was to the effect that he had never had any trouble with his eyesight prior to the accident, but that immediately following it the eyesight in this right eye began to diminish and finally failed entirely. Thus we see that the compensation board had before it the fact that the eyesight of the appellee had never troubled him until this accident; that an infection of the cornea was caused by this accident; and that an infection affects, to some degree at least, the blood. While it is true that the testimony of the doctors was to the effect that the involvement of the choroid and retina was not due primarily to the accident, yet as it became manifest soon, if not immediately, after the accident, the board was, by the sequence of events and the facts it had before it as above outlined, warranted in finding that the accident accelerated or precipitated the involvement of the choroid and retina."

In Kingston-Pocahontas Coal Company v. Maynard, 209 Ky. 431, 273 S. W. 34, cited in the Ramey Case, the employee suffered a stroke of paralysis after he had received an injury in the course of his employment. Three physicians testified that the paralysis was due to apoplexy which could not have been brought about by the accident. The only evidence introduced

by the employee tending to connect his paralytic condition with the accident was evidence to the effect that his health had been good prior to the accident and that the paralysis resulted immediately thereafter. It was held that there was no evidence that his disability resulted solely from the injury he received in the course of his employment, but there was some evidence that it was caused at least in part by the accident, and the case was reversed with directions to the board to apportion the award.

In the instant case we are of the opinion that there is no evidence that the appellee's nervous condition resulted solely from the accident, but there is some evidence that his disability was caused at least in part by the accident, and the board should have apportioned the award. Standard Elkhorn Coal Company v. Royark, 243 Ky. 828, 50 S. W. (2d) 33. It is apparent from the testimony of the physicians that appellee was suffering from a pre-existing disease, but there is evidence from which it may be inferred that his injury contributed to the disability existing at the time the award was made.

The judgment of the circuit court is reversed, with directions to remand the case to the board. The board will determine the extent to which appellee's injury and his pre-existing disease contributed to his disability and apportion the award accordingly.